UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENTUCKY FORGE, INC. and PHOENIX FORGING COMPANY, INC., | : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | JURY TRIAL DEMANDED |
| v. | : : | |
| MILLENNIUM FORGE, INC., | : : | |
| Defendant. | : | |

# COMPLAINT

### Parties

1.      Kentucky Forge, Inc. ("Kentucky") is a Pennsylvania corporation with its principal place of business at 800 Front Street, Catasauqua, Pennsylvania 18032-2343.

2.      Phoenix Forging Company, Inc. ("Phoenix") is a Pennsylvania corporation with its principal place of business at 1020 MacArthur Road, Reading, Pennsylvania 19605.

3.      Millennium Forge, Inc. ("Millennium") is a Wisconsin corporation with its principal place of business at 1000 West Ormsby Avenue, Louisville, Kentucky 40210.

4.      Prior to March 17, 2000, Kentucky was in the business of manufacturing forged metal products at its forging facility located at 1000 West Ormsby Avenue, Louisville, Kentucky.

5.      On March 17, 2000, Kentucky sold most of its assets related to the forging business to Millennium and Kentucky remained in existence collecting amounts owed by Millennium to Kentucky.

### Jurisdiction

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

1

7. The amount in controversy is over $1 million, exceeding $75,000.00, exclusive of interest and costs.

8. The amount in controversy exceeds this Court's $150,000.00 mandatory arbitration requirement.

9. This Court has general personal jurisdiction over Millennium.

10. Part of Millennium's general business activity includes carrying on continuous and systematic business contacts and relationships within Pennsylvania.

11. Millennium markets and sells products to Phoenix, and ships these products to Phoenix in Pennsylvania, on a continuous and systematic basis, and has done so for the past two years.

12. Upon information and belief, Millennium also sells and ships products to other entities within the Commonwealth of Pennsylvania.

13. This Court also has specific personal jurisdiction over Millennium.

14. Millennium, Phoenix and Kentucky negotiated and took steps to enter into an Asset Purchase Agreement and a Transition Agreement in Pennsylvania which form the basis of this lawsuit.

**Venue**

15. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Background Facts Related to this Litigation**

16. On March 17, 2000 Millennium and Kentucky entered into an Asset Purchase Agreement whereby Kentucky sold to Millennium substantially all of Kentucky's assets

2

used in connection with Kentucky's business of designing and manufacturing forged metal products from Kentucky's facility located at 1000 West Ormsby Avenue, Louisville, Kentucky.

17. The Asset Purchase Agreement was executed by Millennium and Kentucky and the assets subject to the agreement were sold by Kentucky to Millennium pursuant to the terms set forth therein.

18. Millennium, Kentucky and Phoenix entered into a Transition Agreement on March 31, 2000, executed in conjunction with the Asset Purchase Agreement.

19. The Asset Purchase Agreement and the Transition Agreement have not been attached to this Complaint because they may contain confidential information that the parties thereto have agreed to keep confidential.

20. Kentucky is in the process of winding up its affairs and has or will shortly assign to Phoenix its rights under the Asset Purchase Agreement and the Transition Agreement, including its right to receive payments from Millennium and Kentucky's ownership rights in Kentucky's assets.

**Vogt Commissions**

21. Pursuant to the terms of the Transition Agreement, the parties thereto set forth a specific arrangement regarding future sales by Millennium of forged metal products to Edward Vogt Value Co., Inc. ("Vogt").

22. Kentucky and Phoenix granted Millennium the right to sell certain forged metal products to Vogt, which were defined in the Transition Agreement as "Existing Vogt Products" and "New Vogt Products" (collectively the "Vogt Products"), in exchange for the payment by Millennium of a commission.

23. The Transition Agreement requires Millennium to pay a commission (the "Vogt Commission") to Kentucky within 15 days from the end of the month in which the net sale proceeds for the Vogt Products were received.

24. Millennium did pay Vogt Commissions to Kentucky for a period of time after the sale of assets (the "Closing").

25. Millennium has made no payments for Vogt Commissions since at least August of 2001 to the present date.

26. The entire amount of the outstanding Vogt Commissions is not known at the present time, however, it is believed to be in excess of $ 40,000.00.

27. Payment of the outstanding Vogt Commissions has been demanded from Millennium, but Millennium has refused to make payment.

28. Millennium's refusal to pay the outstanding Vogt Commissions is in breach of the Transition Agreement and the Asset Purchase Agreement.

**Records Review**

29. The Transition Agreement obligates Millennium to provide statements to Kentucky detailing sales and receipts of net sales proceeds for Vogt products.

30. The Transition Agreement obligates Millennium to make available its records to Kentucky to verify the accuracy of the statements and the Vogt Commissions.

31. Millennium has failed to provide statements detailing sales to Vogt as of August 2001.

32. Millennium has also failed to make available its records to Kentucky so that Kentucky can verify the accuracy of the Vogt Commissions.

33. Millennium's failure to provide statements and access to its records is a breach of the Transition Agreement.

**The 1600 Ton Press Cell**

34. Kentucky is the owner of a 1600 Ton Press Cell (the "Press"), a collection of machinery valued in excess of $1 million.

35. The Press is located at 1000 West Ormsby Avenue, Louisville Kentucky (the "Louisville Facility").

36. The Press was not sold by Kentucky to Millennium in conjunction with the Asset Purchase Agreement. Rather, the ownership of the Press remained with Kentucky even though the Press would physically remain in the Louisville Facility.

37. The Transition Agreement provided that Millennium would store the Press at no cost to Kentucky.

38. The parties also agreed that Millennium would not operate the Press for a six-month period from the date of Closing.

39. Following this period, Millennium had the right, if the Press had not been removed by Kentucky, to make an offer to purchase the Press from Kentucky.

40. If the offer was rejected by Kentucky, then Kentucky was to remove the Press and have the right to sell it to a third party.

41. Millennium informed Kentucky that the Press could stay at the Louisville Facility, as Millennium was interested in purchasing the Press some time in the future.

42. During this period Millennium never asked Kentucky to remove the Press.

43. Millennium did communicate verbally that Millennium is interested in purchasing the Press for $150,000.00, an amount well below the fair market value of the Press.

44. Kentucky requested Millennium to make any offers for the Press in writing.

45. Kentucky also requested Millennium to make any offers for the Press in an amount representing the fair market value of the Press.

46. Millennium has never put its offer to purchase the Press in writing, nor has Millennium ever communicated any other offers to purchase the Press.

47. Kentucky notified Millennium that if Kentucky does not receive an offer for the Press from Millennium, Kentucky will make arrangements to remove the Press from the Louisville Facility.

48. Millennium refused to allow Kentucky to remove Kentucky's Press from the Louisville Facility unless Kentucky first made a payment to Millennium for alleged "storage costs" for storing the Press at the Louisville Facility.

49. Kentucky never agreed to make any payments for storing the Press at the Louisville Facility.

50. Kentucky and Millennium never discussed storage costs for keeping the Press at the Louisville Facility.

51. When Kentucky demanded Millennium to allow Kentucky to retrieve its Press, Millennium, for the first time, stated it was going to charge Kentucky storage costs for the Press.

52. The Asset Purchase Agreement and Transition Agreement do not permit Millennium to charge any storage costs for the Press.

53. Millennium's refusal to permit Kentucky to retrieve Kentucky's Press without first making payment of storage costs is in breach of the Transition Agreement and the Asset Purchase Agreement.

54. Millennium has also used the Press and has borrowed from Kentucky spare parts owned by Kentucky for the Press without Kentucky's consent or prior knowledge.

6

**Vogt Inventories, Dies and Replacement Dies**

55. The Transition Agreement obligated Millennium to store at the Louisville Facility certain products and dies created for Vogt defined as "Excluded Vogt Inventories", "Vogt Dies" and "Replacement Vogt Dies" (collectively the "Vogt Inventories and Dies").

56. The Vogt Inventories and Dies are owned by Kentucky but retained at the Louisville Facility so that Millennium can sell forged metal products to Vogt.

57. Millennium agreed to remit to Kentucky amounts received for the Excluded Vogt Inventories within 15 days of receiving payment for them from Vogt.

58. If Millennium ceased making products for Vogt, then Millennium, at its cost, would be responsible for packaging and making available to Phoenix the Vogt Dies and the Vogt Replacement Dies.

59. Millennium has continued to sell Excluded Vogt Inventories and use Vogt Dies and Replacement Dies to manufacture products for Vogt.

60. Millennium has never asked Kentucky to remove Vogt Inventory or Dies from the Louisville Facility.

61. Prior to the events that gave rise to this lawsuit, Millennium and Kentucky never discussed any storage fees related to the Vogt Inventories and Dies located at the Louisville Facility.

62. Nothing in the Transition Agreements permits Millennium to charge storage fees for Vogt Inventories or Dies.

63. Millennium has communicated to Kentucky that Millennium seeks payments for storage fees for Vogt Inventories and Dies located at the Louisville Facility.

64. Millennium has not offered to return to Kentucky the Vogt Inventories and Dies, apparently because Millennium is still currently manufacturing products for Vogt.

7

65. The Transition Agreement also obligates Millennium to maintain the Vogt Dies in a condition substantially similar to the condition of the Vogt Dies prior to the Closing.

66. Millennium's demand for storage fees for Vogt Inventories and Dies is in breach of the Transition Agreement and Asset Purchase Agreement.

### Phoenix Dies

67. The Transition Agreement obligated Millennium to manufacture forged metal products ordered by Phoenix according to agreed-to prices using dies and replacement dies owned by Phoenix ("Phoenix Dies") and retained at the Louisville Facility.

68. If Millennium ceased making products for Phoenix, then Millennium at its cost, was to package and make available the Phoenix Dies to Phoenix for removal.

69. Millennium has continued to use Phoenix Dies to manufacture products for Phoenix, and thus Millennium had never asked Phoenix to remove Phoenix's Dies from the Louisville Facility.

70. Millennium has refused to return Phoenix's Dies to Phoenix unless Phoenix first makes payments for alleged "storage costs" for Phoenix's Dies at the Louisville Facility.

71. Prior to the events that gave rise to this lawsuit, Millennium and Phoenix never discussed any storage fees related to the Phoenix Dies.

72. Nothing in the Transition Agreements permits Millennium to charge storage charges for Phoenix Dies.

73. Millennium has demanded Phoenix to pay for storage fees for Phoenix Dies located at the Louisville Facility.

8

74. The Transition Agreement also obligates Millennium to maintain the Phoenix Dies in a condition substantially similar to the condition of the Phoenix Dies prior to the Closing.

75. Millennium's refusal to return to Phoenix the Phoenix Dies in the condition existing prior to Closing without prior payment of alleged storage fees is in breach of the Transition Agreement and Asset Purchase Agreement.

**Steel Inventories**

76. The Transition Agreement provides that Millennium agrees to store, at no additional cost to Kentucky, certain pieces of steel inventory owned by Kentucky located at the Louisville Facility (defined in the Asset Purchase Agreement as the "Excluded Steel Inventories").

77. Millennium also agreed to purchase steel from the Excluded Steel Inventories belonging to Kentucky before purchasing any additional similar steel inventory from other sources.

78. Millennium agreed to pay for the steel purchased from the Excluded Steel Inventories by making payment to Kentucky within 15 days from the end of the month during which the purchase is made.

79. Upon information and belief, Millennium has either used or has been obligated to purchase steel from the Excluded Steel Inventories and pay Kentucky in accordance with the Transition Agreement and Asset Purchase Agreements.

80. Millennium has stopped making payments for its purchase of steel from the Excluded Steel Inventories, and is in breach of its obligations under the Asset Purchase Agreements and the Transition Agreement.

9

**Software**

81.     The Transition Agreement obligates Millennium to return or delete software provided by Kentucky and/or Phoenix by September 30, 2000.

82.     Upon information and belief, Millennium has refused to do so, in breach of its obligations under the Transition Agreement.

**Count I – Breach of Contract**

83.     Paragraphs 1 through 82 are incorporated herein by reference.

84.     Millennium, Kentucky and Phoenix entered into an enforceable contract governed by the Asset Purchase Agreement and the Transition Agreement whereby Millennium agreed to

(a)     pay the Vogt Commissions;

(b)     make available to Kentucky statements and records related to Vogt Commissions and sales;

(c)     allow Kentucky to remove its 1600 Ton Press Cell;

(d)     store the Vogt Inventories, Vogt Dies and Vogt Replacement Dies;

(e)     return to Kentucky the Vogt Inventories, Vogt Dies and Vogt Replacement Dies at the termination of sales by Millennium to Vogt;

(f)     return all Vogt Dies belonging to Kentucky in the condition they existed in prior to Closing;

(g)     store the Phoenix Dies and Phoenix Replacement Dies;

(h)     return to Phoenix the Phoenix Dies and Phoenix Replacement Dies at the termination of sales by Millennium to Phoenix;

(i)     return all Phoenix Dies belonging to Phoenix in the condition they existed in prior to Closing;

10

(j) pay for the steel purchased or required to be purchased from the Excluded Steel Inventories by making payment to Kentucky; and

(k) return or destroy software owned by Kentucky;

85. Millennium has breached its contracts with Kentucky and Phoenix by refusing to honor the terms of the Asset Purchase Agreement and/or the Transition Agreement. In particular, Millennium has failed to:

(a) pay the Vogt Commissions;

(b) make available to Kentucky statements and records related to Vogt Commissions and sales;

(c) give Kentucky unconditional access to Kentucky's 1600 Ton Press Cell;

(d) store the Vogt Inventories, Vogt Dies and Vogt Replacement Dies at no charge;

(e) return to Kentucky the Vogt Inventories, Vogt Dies and Vogt Replacement Dies at the termination of sales by Millennium to Vogt;

(f) return all Dies belonging to Kentucky in the condition they existed in prior to Closing;

(g) store the Phoenix Dies and Phoenix Replacement Dies at no charge;

(h) return to Phoenix the Phoenix Dies and Phoenix Replacement Dies at the termination of sales by Millennium to Phoenix;

(i) return all Dies belonging to Phoenix in the condition they existed in prior to Closing;

(j) pay for the steel purchased or required to be purchased from the Excluded Steel Inventories by making payment to Kentucky; and

(k) return or destroy software owned by Kentucky;

86. Millennium has also breached its contracts with Kentucky and Phoenix by refusing to unconditionally return the equipment, dies and inventories owned by Phoenix or Kentucky, respectively.

87. Kentucky and Phoenix have been damaged as a result of Millennium's actions in an amount in excess of $1 million.

WHEREFORE, Kentucky and Phoenix demand

(a) judgment against Millennium in an amount to be determined by the Court, plus consequential damages, interest, attorneys' fees and costs of suit;

(b) Millennium be ordered to return the 1600 Ton Press Cell to Kentucky by requiring Millennium to allow Kentucky to take possession of its Press and make arrangements for its removal;

(c) Millennium be ordered to package and return to Kentucky the Vogt Inventories, Vogt Dies and Vogt Replacement Dies by packaging them and providing unimpeded access to them so that Kentucky can take possession make arrangements for their removal;

(d) Millennium be ordered to package and return to Phoenix the Phoenix Dies and Phoenix Replacement Dies by packaging them and providing unimpeded access to them so that Phoenix can take possession make arrangements for their removal;

(e) Millennium be ordered to return all dies in the condition they were in prior to the time of Closing and/or Millennium be ordered to pay for the cost to refurbish the dies or replace the dies with dies that are in the condition the dies existed in at the time of Closing;

(f) Millennium pay for the steel purchased or required to be purchased from the Excluded Steel Inventories and be ordered to return all remaining steel inventories to Kentucky with or pay for the value of these steel inventories;

(g) Millennium be ordered to provide access to its records such that an accounting can be made to determine amount of Excluded Steel Inventories used by Millennium or required to be used by Millennium;

(h) Millennium pay the outstanding Vogt Commissions due and owing with interest thereon;

(i) Millennium return or destroy Kentucky's software;

(j) Millennium permit Kentucky access to Millennium's books and records and that Millennium be provided statements to determine the accuracy of the Vogt Commissions owed to Kentucky;

(k) Millennium return all remaining items owned either by Kentucky or Phoenix; and

(l) a declaratory judgment stating that Millennium is not entitled to any monies from either Phoenix or Kentucky related to storage fees related to the Press, equipment, parts, inventories, dies, steel, software or any other items currently located at the Louisville Facility owned by either Kentucky or Phoenix.

### Count II – Conversion

88. Paragraphs 1 through 87 are incorporated herein by reference.

89. Millennium's use of the 1600 Ton Press Cell and replacement parts owned by Kentucky without Kentucky's permission and without any payment of rent or fees to Kentucky is wrongful and constitutes conversion.

13

90.     Millennium's refusal to unconditionally surrender the 1600 Ton Press Cell to Kentucky is wrongful and constitutes conversion.

91.     Millennium's refusal to unconditionally surrender Vogt inventories, Vogt Dies, and Vogt Replacement Dies, Kentucky's software, Phoenix Dies, and Phoenix Replacement Dies, Kentucky Steel Inventories, and all other property owned by Kentucky or Phoenix is wrongful and constitutes conversion.

92.     Millennium's refusal to return property owned by Phoenix or Kentucky is intentional and malicious.

WHEREFORE, Kentucky and Phoenix demand:

(a)     judgment against Millennium in an amount to be determined by the Court, plus consequential damages, interest, attorneys' fees and costs of suit;

(b)     Millennium be ordered to return the 1600 Ton Press Cell to Kentucky by requiring Millennium to allow Kentucky to take possession of its Press and make arrangements for its removal;

(c)     Millennium be ordered to package and return to Kentucky the Vogt Inventories, Vogt Dies and Vogt Replacement Dies by packaging them and providing unimpeded access to them so that Kentucky can take possession make arrangements for their removal;

(d)     Millennium be ordered to package and return to Phoenix the Phoenix Dies and Phoenix Replacement Dies by packaging them and providing unimpeded access to them so that Phoenix can take possession make arrangements for their removal;

(e)     Millennium be ordered to return all dies in the condition they were in prior to the time of Closing and/or Millennium be ordered to pay for the cost to refurbish the dies or replace the dies with dies that are in the condition the dies existed in at the time of Closing;

   (f) Millennium pay for the steel purchased or required to be purchased from the Excluded Steel Inventories and be ordered to return all remaining steel inventories to Kentucky with or pay for the value of these steel inventories;

   (g) Millennium be ordered to provide access to its records such that an accounting can be made to determine amount of Excluded Steel Inventories used by Millennium or required to be used by Millennium;

   (h) Millennium pay the outstanding Vogt Commissions due and owing with interest thereon;

   (i) Millennium return or destroy Kentucky's software;

   (j) Millennium permit Kentucky access to Millennium's books and records and that Millennium be provided statements to determine the accuracy of the Vogt Commissions owed to Kentucky;

   (k) Millennium return all remaining items owned either by Kentucky or Phoenix;

   (l) a declaratory judgment stating that Millennium is not entitled to any monies from either Phoenix or Kentucky related to storage fees related to the Press, equipment, parts, inventories, dies, steel, software or any other items currently located at the Louisville Facility owned by either Kentucky or Phoenix; and

   (m) punitive damages.

### Count III – Unjust Enrichment

93. Paragraphs 1 through 92 are incorporated herein by reference.

94. Millennium has been unjustly enriched by

   (a) using the 1600 Ton Press Cell without making any payments to Kentucky for such use;

15

(b) using replacement parts for the 1600 Ton Press Cell without making any payments to Kentucky for such use;

(c) selling products to Vogt without paying the commissions due and owing to Kentucky;

(d) retaining Kentucky's 1600 Ton Press Cell;

(e) retaining the Vogt Inventories, Vogt Dies and Vogt Replacement Dies;

(f) refusing to return all Dies belonging to Kentucky in the condition they existed in prior to Closing;

(g) retaining the Phoenix Dies and Phoenix Replacement Dies;

(h) refusing to return all Dies belonging to Phoenix in the condition they existed in prior to Closing;

(i) refusing to pay Kentucky for the steel purchased or required to be purchased from the Excluded Steel Inventories;

(j) refusing to return or destroy software owned by Kentucky; and

(k) refusing to return all other remaining property owned by Kentucky or Phoenix located at the Louisville Facility.

95. As a result of the unjust enrichment, Kentucky and Phoenix have been damaged.

WHEREFORE, Kentucky and Phoenix demand

(a) judgment against Millennium in an amount to be determined by the Court, plus consequential damages, interest, attorneys' fees and costs of suit;

(b) Millennium be ordered to return the 1600 Ton Press Cell to Kentucky by requiring Millennium to allow Kentucky to take possession of its Press and make arrangements for its removal;

(c) Millennium be ordered to package and return to Kentucky the Vogt Inventories, Vogt Dies and Vogt Replacement Dies by packaging them and providing unimpeded access to them so that Kentucky can take possession make arrangements for their removal;

(d) Millennium be ordered to package and return to Phoenix the Phoenix Dies and Phoenix Replacement Dies by packaging them and providing unimpeded access to them so that Phoenix can take possession make arrangements for their removal;

(e) Millennium be ordered to return all dies in the condition they were in prior to the time of Closing and/or Millennium be ordered to pay for the cost to refurbish the dies or replace the dies with dies that are in the condition the dies existed in at the time of Closing;

(f) Millennium pay for the steel purchased or required to be purchased from the Excluded Steel Inventories and be ordered to return all remaining steel inventories to Kentucky with or pay for the value of these steel inventories;

(g) Millennium be ordered to provide access to its records such that an accounting can be made to determine amount of Excluded Steel Inventories used by Millennium or required to be used by Millennium;

(h) Millennium pay the outstanding Vogt Commissions due and owing with interest thereon;

(i) Millennium return or destroy Kentucky's software;

17

(j) Millennium permit Kentucky access to Millennium's books and records and that Millennium be provided statements to determine the accuracy of the Vogt Commissions owed to Kentucky;

(k) Millennium return all remaining items owned either by Kentucky or Phoenix; and

(l) a declaratory judgment stating that Millennium is not entitled to any monies from either Phoenix or Kentucky related to storage fees related to the Press, equipment, parts, inventories, dies, steel, software or any other items currently located at the Louisville Facility owned by either Kentucky or Phoenix.

Date: July _____, 2002                     STEVENS & LEE

                                           By _____
                                              Daniel B. Huyett, Esquire
                                              Attorney I.D. No. 21385
                                              Karin K. Ashford, Esquire
                                              Attorney I.D. No. 83909
                                              111 North Sixth Street
                                              P.O. Box 679
                                              Reading, PA  19603-0679
                                              (610) 478-2034

**Jury Demand**

Plaintiffs Kentucky and Phoenix demand a trial by jury on all issues triable by jury.

Date: July _____, 2002                     STEVENS & LEE

                                           By _____
                                              Daniel B. Huyett, Esquire
                                              Attorney I.D. No. 21385
                                              Karin K. Ashford, Esquire
                                              Attorney I.D. No. 83909
                                              111 North Sixth Street
                                              P.O. Box 679
                                              Reading, PA  19603-0679
                                              (610) 478-2034

SL1 275805v1/06099.014

SL1 275805v1/06099.014