### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

KENTUCKY FORGE, INC. and : 
PHOENIX FORGING COMPANY, INC., : 
                                  : 
               Plaintiffs, :     CIVIL ACTION NO. 02 CV 4569
                                    : 
      v.                           : 
                                    :     JURY TRIAL DEMANDED
MILLENNIUM FORGE, INC., : 
                                    : 
            Defendant. : 
_____:

### ANSWER AND COUNTERCLAIM OF
### DEFENDANT MILLENNIUM FORGE, INC.

Defendant Millennium Forge, Inc. ("Millennium"), by and through its counsel Hoyle, Morris & Kerr LLP, answers the Complaint of Plaintiffs Kentucky Forge, Inc. ("Kentucky") and Phoenix Forging Company, Inc. ("Phoenix") and avers Counterclaims as follows:

1-2.     Admitted.  Upon information and belief, Millennium admits the averments in Paragraphs 1-2 of the Complaint.

3.     Admitted.  Millennium admits that it is a Wisconsin corporation with its principal place of business in Louisville, Kentucky.

4.     Admitted.

5.     It is admitted than on March 17, 2000, Kentucky sold its assets related to the forging business to Millennium.  After reasonable investigation, Millennium is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph 5 of the Complaint.

6.     Denied.  The averments contained Paragraph 6 of the Complaint state conclusions of law to which no response is required.

7.      Denied.  Each and every averment contained in Paragraph 7 of the Complaint is denied, except it is admitted that Kentucky and Phoenix purport to claim damages in excess of $75,000.  It is specifically denied that any sum is due and owing to either Kentucky or Phoenix.

8.      Denied.  Each and every averment contained in Paragraph 8 of the Complaint is denied.  It is specifically denied that any sum is due and owing to either Kentucky or Phoenix.

9.      Denied.  The averments contained in Paragraph 9 of the Complaint state conclusions of law to which no response is required.

10.      Denied.  It is specifically denied that Millennium's business activity includes continuous and systematic contacts within Pennsylvania.  To the contrary, Millennium avers that its business contact and relationship within Pennsylvania is very infrequent.

11.      Admitted in part, denied in part.  It is admitted that Millennium sells and ships products to Phoenix in Pennsylvania.  It is denied that that these shipments and activities are on a continuous and systematic basis.

12.      Denied.  It is specifically denied that Millennium sells and ships products to other entities within Pennsylvania.  To the contrary, Millennium avers that Phoenix is the only entity Millennium sells and ships products to within Pennsylvania.

13.      Denied.  The averments contained in Paragraph 13 of the Complaint state conclusions of law to which no response is required.

14.      Denied.  Millennium denies that negotiations and steps to enter into an Asset Purchase Agreement and a Transition Agreement took place solely in Pennsylvania.  By way of further answer, Millennium avers that all the meetings and the majority of negotiations

between Millennium, Kentucky and Phoenix to enter into an Asset Purchase Agreement and a Transition Agreement also took place in Kentucky and Wisconsin.

15.     Denied.  The averments contained in Paragraph 15 of the Complaint state conclusions of law to which no response is required.

16.     Denied.  Each and every averment contained in Paragraph 16 of the Complaint is denied, except it is admitted that on March 17, 2000, Millennium and Kentucky entered into an Asset Purchase Agreement.  The Asset Purchase Agreement, being a writing, speaks for itself.

17.     Denied.  Each and every averment contained in Paragraph 17 of the Complaint is denied except it is admitted that the Asset Purchase Agreement was executed by Millennium and Kentucky.  The Asset Purchase Agreement, being a writing, speaks for itself.

18.     Admitted.  It is admitted that on March 31, 2000, Millennium, Kentucky and Phoenix entered into a Transition Agreement.

19.     Millennium is without knowledge and information as to Plaintiffs' reasons for not attaching the Asset Purchase Agreement and the Transition Agreement to the Complaint.

20.     Denied.  After reasonable investigation, Millennium is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph 20 of the Complaint.  The Asset Purchase Agreement and the Transition Agreement, being writings, speak for themselves.

21.     Denied.  Each and every averment contained in Paragraph 21 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

22.     Denied.  Each and every averment contained in Paragraph 22 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

23.    Denied.  Each and every averment contained in Paragraph 23 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

24.    Admitted.

25.    It is admitted that Millennium has made no payments for Vogt Commissions since August of 2001.  By way of further answer, Millennium avers that any Commissions, if at all, that may be due are offset by the storage fees owed to Millennium by Kentucky and Phoenix.

26.    Millennium denies that any sum is due and owing or any Vogt Commissions are outstanding.  By way of further answer, Millennium avers that any Commissions, if at all, that may be due are offset by the storage fees owed to Millennium by Kentucky and Phoenix.

27.    Admitted in part, denied in part.  It is admitted that payment of Vogt Commissions have been demanded from Millennium.  It is specifically denied that any sum is due and owing or any Vogt Commissions are outstanding.  By way of further answer, Millennium avers that any Commissions, if at all, that may be due are offset by the storage fees owed to Millennium by Kentucky and Phoenix.

28.    Denied.   The averments contained in Paragraph 28 of the Complaint state conclusions of law to which no response is required.

29.    Denied.  Each and every averment contained in Paragraph 29 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

30.    Denied.  Each and every averment contained in Paragraph 30 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

31.     Denied as stated.  Millennium denies the averments contained in Paragraph 31 of

the Complaint as stated.  To the contrary, Millennium avers that each payment of the Vogt

Commissions made by Millennium was accompanied by the required statements pursuant to the

Transition Agreement.

32.    Denied.  Each and every averment contained in Paragraph 32 of the

Complaint is denied.  Millennium specifically denies that it has failed to make available its

records to Kentucky.  By way of further answer, Millennium avers that Kentucky never

requested Millennium to make its records available.

33.    Denied.  The averments contained in Paragraph 33 of the Complaint state

conclusions of law to which no response is required.

34.    After reasonable investigation, Millennium is without knowledge or

information sufficient to form a belief as to the truth of the averments contained in Paragraph 34

of the Complaint.

35.    Admitted.

36.    Denied.  The Asset Purchase Agreement, being a writing, speaks for itself.

37.    Denied.  Each and every averment contained in Paragraph 37 of the

Complaint is denied.  By way of further answer, Millennium specifically denies that it was

obligated to store the Press at no cost to Kentucky.  To the contrary, Millennium avers that it was

only obligated to store the Press for a six-month period from the date of the Closing and after the

six months had lapsed, Kentucky was obligated to remove the Press promptly.

38.    Admitted.  By way of further answer, Millennium avers that it did not

operate or use the Press during the six-month period from the date of Closing.

39.    Admitted.  By way of further answer, Millennium avers that it submitted

an offer to purchase the Press from Kentucky.

40.     Denied.  The Transition Agreement, being a writing, speaks for itself.

41.     Denied.  Each and every averment contained in Paragraph 41 of the Complaint is denied.  It is specifically denied that Millennium ever permitted Kentucky to keep, leave or store the Press at the Louisville Facility, at no cost, beyond the six-month period from the date of Closing.

42.     Admitted in part, denied in part.  It is admitted that Millennium did not ask Kentucky to remove the Press prior to making an offer for purchase.  It is denied that Millennium ever acquiesced or permitted Kentucky to keep, leave or store the Press at the Louisville Facility indefinitely.

43.     Denied.  Each and every averment contained in Paragraph 43 of the Complaint is denied except it is admitted that Millennium did communicate an offer to purchase the Press to Kentucky.  By way of further answer, Millennium avers that its offer to purchase the Press was reasonable.

44.     Denied.  It is specifically denied that Kentucky ever requested that Millennium's offer to purchase the Press be put in writing.  By way of further answer, Millennium avers that it was not required or obligated to make its offer to purchase the Press in writing.  To the contrary, the Transition Agreement is silent as to the method to be employed by Millennium in making its offer.

45.     Denied.  It is specifically denied that Kentucky ever requested that Millennium's offer to purchase the Press be in an amount representing the fair market value of the Press.  By way of further answer, Millennium avers that its offering price for the Press represented its fair market value.

46.     Denied as stated.  Millennium avers that it did make an oral and written offer to

purchase the Press.  By way of further answer, Millennium denies that it was ever required to put its offer in writing or communicate any other offers for the purchase of the Press.

47.     Denied.  Each and every averment contained in Paragraph 47 of the Complaint is denied.  It is specifically denied that Kentucky ever notified Millennium of any intention to remove the Press.  By way of further answer, Millennium avers that Kentucky never communicated a rejection of Millennium's offer to purchase the Press and nor did it communicate any arrangements to remove the Press.

48.     Admitted in part, denied in part.  It is admitted that Millennium has demanded storage costs from Kentucky for storing the Press.  It is specifically denied that Millennium has ever refused to allow Kentucky to remove the Press from the Louisville Facility.  To the contrary, Millennium avers that it has on more than one occasion requested that Kentucky remove the Press from the Louisville Facility.

49.     Denied.  Each and every averment contained in Paragraph 49 of the Complaint is denied.  By way of further answer, Millennium avers that it was required to store the Press at no cost only for a period of six months after the Closing and Kentucky failed to remove the Press after the conclusion of that period.

50.     Denied.  Each and every averment contained in Paragraph 50 of the Complaint is denied.

51.     Denied.  Each and every averment contained in Paragraph 51 of the Complaint is denied.  It specifically denied that Kentucky has ever demanded or attempted to retrieve the Press.

52.     Denied.  Each and every averment contained in Paragraph 52 of the

Complaint is denied.  The Asset Purchase Agreement and the Transition Agreement, being writings, speak for themselves.

53.    Denied.  The averments contained in Paragraph 53 of the Complaint state conclusions of law to which no response is required.

54.    Denied.  Each and every averment contained in Paragraph 54 of the Complaint is denied.  It is specifically denied that Millennium ever used the Press.  By way of further answer, Millennium avers that any alleged use of the replacement parts, if at all, by Millennium, was with the knowledge and consent of Kentucky.

55.    Denied.  Each and every averment contained in Paragraph 55 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

56.    Admitted in part, denied in part.  It is admitted that the Vogt Inventories and Dies are located at the Louisville Facility.  After reasonable investigation, Millennium is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph 56 of the Complaint.

57.    Denied.  Each and every averment contained in Paragraph 57 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

58.    Denied.  Each and every averment contained in Paragraph 58 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

59.    It is admitted that Millennium has continued to sell Excluded Vogt Inventories and has used Vogt Inventories and Dies to manufacture Vogt products.  By way of further answer, Millennium avers that despite statements made to the contrary by Kentucky and Phoenix, the volume of Vogt products manufactured is very low and Millennium's use of Vogt Inventories and Dies for this production is minimal at best.

60.     Admitted in part, denied in part.  Millennium admits that it has never specifically requested the removal of the Vogt Inventories and Dies.  By way of further answer, Millennium avers that it has notified Kentucky and/or Phoenix that it no longer intends to use the Vogt Inventories and Dies and that arrangements for removal should be made.

61.     Admitted.

62.     Denied.  Each and every averment contained in Paragraph 62 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

63.     Admitted.

64.     Admitted in part, denied in part.  It is admitted that Millennium is still manufacturing products for Vogt.  It is denied that Millennium has not offered to return to Kentucky the Vogt Inventories and Dies.  By way of further answer, Millennium avers that Kentucky has never requested or attempted to remove the Vogt Inventories and Dies.

65.     Denied.  Each and every averment contained in Paragraph 65 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.  By way of further answer, Millennium avers that it has maintained the Vogt Dies in a condition substantially similar to the condition of the Vogt Dies prior to the Closing.

66.     Denied.  The averments contained in Paragraph 66 of the Complaint state conclusions of law to which no response is required.

67.     Denied.  Each and every averment contained in Paragraph 67 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

68.     Denied.  Each and every averment contained in Paragraph 68 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

69.     Denied.  Each and every averment contained in Paragraph 69 of the

Complaint is denied. It is specifically denied that Millennium is using the Phoenix Dies to manufacture products for Phoenix. By way of further answer, Millennium avers that it has requested that Kentucky and/or Phoenix remove the Phoenix Dies from the Louisville Facility.

70.    Admitted in part, denied in part. It is specifically denied that Millennium has ever

refused to return Phoenix' Dies to Phoenix. It is admitted that Millennium has requested storage costs for the Phoenix Dies.

71.    Admitted.

72.    Denied. Each and every averment contained in Paragraph 72 of the Complaint is denied. The Transition Agreement, being a writing, speaks for itself.

73.    Admitted.

74.    Denied. Each and every averment contained in Paragraph 74 of the Complaint is denied. The Transition Agreement, being a writing, speaks for itself. By way of further answer, Millennium avers that it has maintained all the Phoenix Dies in a condition substantially similar to the condition of the Phoenix Dies prior to the Closing.

75.    Denied. The averments contained in Paragraph 75 of the Complaint state conclusions of law to which no response is required.

76.    Denied. Each and every averment contained in Paragraph 76 of the Complaint is denied. The Transition Agreement, being a writing, speaks for itself.

77.    Denied. Each and every averment contained in Paragraph 77 of the Complaint is denied. The Transition Agreement, being a writing, speaks for itself.

78.    Denied. Each and every averment contained in Paragraph 78 of the Complaint is denied. The Transition Agreement, being a writing, speaks for itself.

79.     Admitted in part, denied in part.  It is admitted that Millennium has used and purchased steel from the Excluded Steel Inventory.  The remaining averments contained in Paragraph 79 of the Complaint state conclusions of law to which no response is required.

80.     Denied.  The averments contained in Paragraph 80 of the Complaint state conclusions of law to which no response is required. To the contrary, Millennium avers that payments have been made to Kentucky for any steel used or purchased from the Excluded Steel Inventories.  To the extent any additional monies is owed for the use of Excluded Steel inventories it is offset by the storage fees owed to Millennium by Kentucky and Phoenix.

81.     Denied.  Each and every averment contained in Paragraph 81 of the Complaint is denied.  The Transition Agreement, being a writing, speaks for itself.

82.     Denied.  The averments contained in Paragraph 82 of the Complaint are conclusions of law to which no response is required.

### Count I—Breach of Contract

83.     Millennium hereby incorporates by reference its answer to Paragraphs 1-82 of the Complaint.

84.     Denied.  The averments contained in Paragraph 84a-k of the Complaint state conclusions of law to which no response is required.  By way of further answer, the Asset Purchase Agreement and the Transition Agreement, being writings, speak for themselves.

85.      Denied.  The averments contained in Paragraph 85a-k of the Complaint state conclusions of law to which no response is required.  By way of further answer, the Asset Purchase Agreement and the Transition Agreement, being writings, speak for themselves.

86.     Denied.  The averments contained in Paragraph 86 of the Complaint state

conclusions of law to which no response is required.  By way of further answer, Millennium

denies that it has refused to return the equipment, dies and inventories owned by Phoenix or

Kentucky.

87.    Denied.

WHEREFORE, Millennium respectfully request that the Court enter judgment in

its favor and against Kentucky and Phoenix, together with costs, attorneys' fees and such other

relief as the Court deems just and proper.

## Count II—Conversion

88.    Millennium hereby incorporates by reference its answer to Paragraphs 1-

87 of the Complaint.

89.    Denied.  The averments contained in Paragraph 89 of the Complaint state

conclusions of law to which no response is required.  By way of further answer, Millennium

avers that it has never used the Press and any alleged use of any replacement parts, if at all, was

with the knowledge and consent of Kentucky.

90.    Denied.  The averments contained in Paragraph 90 of the Complaint state

conclusions of law to which no response is required.

91.    Denied.  The averments contained in Paragraph 91 of the Complaint state

conclusions of law to which no response is required.

92.    Denied.

WHEREFORE, Millennium respectfully requests that the Court enter judgment in

its favor and against Kentucky and Phoenix, together with costs, attorneys' fees and such other

relief as the Court deems just and proper.

**Count III—Unjust Enrichment**

93.     Millennium hereby incorporates by reference its answer to Paragraphs 1-92 of the Complaint.

94.     Denied.  The averments contained in Paragraphs 94a-k of the Complaint state conclusions of law to which no response is required.

95.     Denied.

WHEREFORE, Millennium respectfully requests that the Court enter judgment in its favor and against Kentucky and Phoenix, together with costs, attorneys' fees and such other relief as the Court deems just and proper.

**AFFIRMATIVE DEFENSES**

96.     Kentucky and Phoenix' Complaint fails to state a claim upon which relief can be granted.

97.     Kentucky and Phoenix have failed to state a claim for breach of contract.

98.     Kentucky and Phoenix have failed to state a claim for conversion.

99.     Millennium has not used Kentucky's Press or replacement parts without Kentucky's permission.

100.     Millennium has not refused to surrender Kentucky's Press, equipment or Dies.

101.     Millennium has not refused to surrender Phoenix' equipment, Inventories or Dies.

102.     Kentucky and Phoenix have failed to state a claim for unjust enrichment.

103.     Kentucky and Phoenix' claims are barred by the doctrine of accord and satisfaction.

104.    Kentucky and Phoenix' claims are barred by the statute of limitations.

105.    Kentucky and Phoenix' claims are barred by the doctrine of estoppel.

106.    Kentucky and Phoenix' claims are barred by the doctrine of laches.

107.    Kentucky and Phoenix' claims are barred by the doctrine of waiver.

108.    Kentucky and Phoenix' claims are barred by the doctrine of unclean hands.

109.    Kentucky and Phoenix breached the Transition Agreement first.

110.    Kentucky and Phoenix breached the Asset Purchase Agreement first.

111.    Kentucky and Phoenix' claims are barred by the parol evidence rule.

112.    Millennium is entitled to a set-off for sums due and owing to Kentucky and Phoenix based on the substantial damages incurred by Millennium as a result of Kentucky and Phoenix' breach of the parties' agreements.  The set-off amount owed to Millennium by Kentucky and Phoenix negates any amount that Millennium allegedly owes to either Kentucky or Phoenix.

113.    Kentucky and Phoenix have failed to mitigate their damages, if any.

114.    This court does not have personal jurisdiction over Millennium.

115.    The Eastern District of Pennsylvania is not the proper venue for this litigation.

116.    Millennium has not knowingly or intentionally waived any applicable affirmative defenses.  Millennium hereby gives notice that it intends to rely upon such other defenses as become available or apparent during investigation and discovery.

## COUNTERCLAIMS

Millennium by way of counterclaims avers as follows:

### Count I—Breach of Contract

117.    Millennium hereby restates and  incorporates by reference Paragraphs 1 through 116 above.

118.    The Transition Agreement provided that Millennium would store the 1600 Ton Press Cell (the "Press") at no cost to Kentucky for six months after the date of the Closing.

119.    The date of the Closing was March 17, 2000.

120.    Millennium's obligation to store the Press at no cost ended on September 30, 2000.

121.    Pursuant to the Transition Agreement, after the six-month period, Millennium had the right to make an offer to purchase the Press from Kentucky.

122.    If the offer was rejected by Kentucky, then Kentucky was obligated to remove the Press promptly from Millennium's Louisville Facility.

123.    Pursuant to the Transition Agreement, Millennium made an offer of $150,000 to purchase the Press from Kentucky.

124.    Kentucky never communicated a rejection of this offer.

125.    Neither Kentucky nor Phoenix responded to Millennium's offer for the purchase of the Press.

126.    Millennium requested that Kentucky remove the Press.

127.    Kentucky continued to store the Press at Millennium's Louisville Facility and refused to remove the Press.

128.    Kentucky made no arrangements to remove the Press, nor did it ever

discuss or communicate its desire or intention to remove the Press with Millennium.

129.    To date, the Press remains at Millennium's Louisville Facility.

130.    Kentucky's storage of its Press at Millennium's Louisville Facility resulted in loss of Millennium's valuable and expensive space.

131.    Millennium has incurred storage costs relating to Kentucky's storage of its Press at the Louisville Facility.

132.    By failing to promptly remove the Press after the expiration of the six-month period from the date of the Closing, Kentucky breached the Transition Agreement.

133.    As a result of Kentucky's actions and failure to remove the Press, Millennium has been damaged in the amount of $42,000 through June 2002 and this amount continues to grow.

WHEREFORE, Millennium respectfully requests that this Court:

a)  enter judgment in favor of Millennium and against Kentucky and Phoenix for the full amount of the storage costs, plus consequential damages, interest, attorney's fees and costs;

b)  order Kentucky and/or Phoenix to remove the Press from Millennium's Louisville Facility immediately, at Kentucky and/or Phoenix' expense;

c)  enter judgment in favor of Millennium and against Kentucky and Phoenix for any other such relief that the Court deems just and proper.

**Count II—Negligent Misrepresentation**

134.    Millennium hereby restates and  incorporates by reference Paragraphs 1 through 133 above.

135.    Prior to entering into the Asset Purchase Agreement and Transition Agreement,

16

Millennium engaged in discussions and negotiations with Kentucky and Phoenix.

136.    During the course of these discussions, Millennium inquired about the business relationship between Kentucky, Phoenix and the Edward Vogt Value Co., Inc. ("Vogt").

137.    Millennium's inquiry was directed at the nature of the relationship with Vogt and the quantity of products specifically manufactured and sold to Vogt each month.

138.    Kentucky and Phoenix both represented that they had an excellent business relationship with Vogt.

139.    Kentucky and Phoenix also represented that the volume of the specifically manufactured Vogt products was high.

140.    Kentucky and Phoenix also represented that Vogt's demand for the specifically manufactured products was large.

141.    Kentucky and Phoenix represented that manufacturing of Vogt products has been in the past and will continue to be profitable.

142.    Kentucky and Phoenix made these representations in an attempt to entice Millennium to enter into the Asset Purchase Agreement and the Transition Agreement.

143.    Kentucky and Phoenix knew that Millennium would rely upon their representations with regards to the profitability of the Vogt aspect of Kentucky's business.

144.    In reliance upon Kentucky and Phoenix' representations, Millennium viewed the business deal to acquire Kentucky's assets and to manufacture specific products for Vogt as a lucrative business venture.

145.    In reliance upon Kentucky and Phoenix' representations, Millennium entered into the Asset Purchase Agreement and the Transition Agreement.

146.    In reliance upon Kentucky and Phoenix' representations, Millennium agreed to

pay Kentucky and Phoenix a 2.5% commission on any and all sales of Vogt products.

147.    In the months following the Closing, the true nature of the Vogt/Kentucky relationship surfaced.

148.    The business relationship between Kentucky and Vogt was poor.

149.    Vogt's demands for the specifically manufactured products were low.

150.    Vogt refused to continue to purchase products from Millennium.

151.    Contrary to the representations made by Kentucky and Phoenix during the negotiations, manufacturing of Vogt products was not profitable.

152.    In making misrepresentations regarding the Vogt business, Kentucky and Phoenix

breached their duty to negotiate and deal in good faith.

153.    As a result of Kentucky and Phoenix' misrepresentations of the Vogt business, Millennium has been damaged.

WHEREFORE, Millennium respectfully requests that the Court enter judgment in its favor and against Kentucky and Phoenix, for damages, compensatory and punitive, together with costs, attorneys' fees and such other relief as the Court deems just and proper.

### Count III—Unjust Enrichment

155.    Millennium hereby restates and incorporates by reference Paragraphs 1 through 154 above.

156.    Millennium's obligation to store Kentucky's Press at no cost ended on September 30, 2000.

157.    To date, Millennium has continued to store the Press at its Louisville Facility.

158.    To date, Millennium has continued to store the Phoenix Dies at its Louisville

Facility.

159.    To date, Millennium has continued to store the Phoenix Inventories at its Louisville Facility.

160.    To date, Millennium has continued to store the Excluded Steel Inventories at its Louisville Facility.

161.    On more than one occasion, Millennium has requested that Kentucky and/or Phoenix remove the Press, the Phoenix Dies, the Phoenix Inventories and the Excluded Steel Inventories from the Louisville Facility.

162.    Kentucky and/or Phoenix have failed to remove their equipment and their inventory.

163.    Kentucky and/or Phoenix have been unjustly enriched by:

   a)   storing the Press at the Louisville Facility at no cost;

   b)   storing the Phoenix Dies at the Louisville Facility at no cost;

   c)   storing the Phoenix Inventories at the Louisville Facility at no cost;

   d)   storing the Excluded Steel Inventories at the Louisville Facility at no cost.

164.    As a result of the unjust enrichment, Millennium has been damaged.

WHEREFORE, Millennium respectfully requests that this Court:

a)   enter judgment in favor of Millennium and against Kentucky and Phoenix for the full amount of the storage costs, plus consequential damages, interest, attorney's fees and costs;

b)   order Kentucky and/or Phoenix to remove the Press, the Phoenix Dies, the Phoenix Inventories and the Excluded Steel Inventories from Millennium's Louisville Facility immediately, at Kentucky and/or Phoenix' expense;

c)  enter judgment in favor of Millennium and against Kentucky and Phoenix for any

other such relief that the Court deems just and proper.


Respectfully submitted,


_____

Joann M. Lytle
A.  Elizabeth Balakhani
ID Nos. 59281, 87937
Hoyle, Morris & Kerr LLP
1650 Market Street
One Liberty Place, Suite 4900
Philadelphia, PA 19102

Attorneys for Defendant
Millennium Forge, Inc.

Dated: September 6, 2002

20

## <u>CERTIFICATE OF SERVICE</u>

I, A. Elizabeth Balakhani, Esquire, hereby certify that on September 6, 2002, I caused to

be served a true and correct copy of the foregoing Defendant's Answer to Plaintiffs' Complaint,

via first class mail, upon the following:


<u>Attorneys for Plaintiffs:</u>

Daniel B. Huyett, Esquire
Karin K. Ashford, Esquire
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679


_____
A. Elizabeth Balakhani