UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENTUCKY FORGE, INC. and PHOENIX FORGING COMPANY, INC., | : : : | CIVIL ACTION NO. 02 CV 4569 |
| Plaintiffs, | : : | JURY TRIAL DEMANDED |
| v. | : : | |
| MILLENNIUM FORGE, INC., | : : | |
| Defendant. | : | |

### ANSWER OF PLAINTIFFS TO COUNTERCLAIM OF DEFENDANT MILLENNIUM FORGE, INC.

Plaintiffs Kentucky Forge, Inc. ("Kentucky") and Phoenix Forging Company, Inc. ("Phoenix"), by and through counsel, Stevens & Lee, answers the Counterclaim of Defendant Millennium Forge, Inc. ("Millennium") as follows:

**Count I – Breach of Contract**

117.    Kentucky and Phoenix incorporate by reference the allegations set forth in paragraphs 1 through 95 of their Complaint, deny the factual averments made in paragraphs 96 through 116 of Millennium's affirmative defenses, and state that paragraphs 96–98, and 102–116 contain conclusions of law to which no response is required.

118.    Denied. The Transition Agreement is a document that speaks for itself and all characterizations of it are specifically denied.

119.    Admitted.

120.    Denied. The Transition Agreement is a document that speaks for itself and all characterizations of it are specifically denied. Neither Kentucky nor Phoenix ever agreed to pay any rental or storage fees to Millennium for storing the Press after the six-month period ended.

1

121. Denied. The Transition Agreement is a document that speaks for itself and all characterizations of it are specifically denied.

122. Denied. The Transition Agreement does not set forth any removal provisions or timetable for removal of the Press. Kentucky was not under an obligation to remove the Press on a date certain. Moreover, the Transition Agreement is a document that speaks for itself and all characterizations of it are specifically denied.

123. It is admitted that Millennium made a verbal offer of $150,000 to purchase the Press. This offer was never made in writing, despite being requested to do so by Kentucky. It is denied that this offer was a reasonable offer or in any way an offer intended to be seriously considered by Kentucky. By way of further response, the Transition Agreement is a document that speaks for itself and all characterizations of it are specifically denied.

124. Denied. Kentucky responded to Millennium's verbal offer by stating that any offers should be made in writing and should be made in an amount that represents the fair market value of the Press. The only written offer made for the Press was in the amount of $100,000 which Millennium admitted was well below what Phoenix and/or Kentucky would consider as reasonable.

125. Denied. Kentucky responded to Millennium's verbal offer by stating that any offers should be made in writing and should be made in an amount that represents the fair market value of the Press. The only written offer made for the Press was in the amount of $100,000 which Millennium admitted was well below what Phoenix and/or Kentucky would consider as reasonable.

126. Denied. Millennium never asked Kentucky to remove the Press until immediately prior to the initiation of this lawsuit. Moreover, Millennium would not permit Kentucky to remove the Press unless Kentucky first tendered payment for alleged storage fees.

SL1 295801v1/06099.014

127.    Denied.  Millennium never asked Kentucky to remove the Press until immediately prior to the initiation of this lawsuit.  Moreover, Millennium would not permit Kentucky to remove the Press unless Kentucky first tendered payment for alleged storage fees.

128.    Denied.  Millennium never asked Kentucky to remove the Press until immediately prior to the initiation of this lawsuit.  Moreover, Millennium would not permit Kentucky to remove the Press unless Kentucky first tendered payment for alleged storage fees.

129.    After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 129.

130.    Denied.  It is denied that the storage of the Press has caused any loss of valuable and/or expensive space to Millennium.  To the contrary, upon information and belief, Millennium has made use of the Press, which has conferred a benefit on Millennium.

131.    Denied.  It is denied that the storage of the Press at Millennium's Facility has caused Millennium to incur any storage costs.  By way of further response, after reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 131.

132.    Denied.  It is denied that the Transition Agreement obligated Kentucky to remove the Press on a date certain after which a rental fee would be charged.  The Transition Agreement is a document that speaks for itself and thus all characterizations of it are specifically denied.

133.    Denied.  It is denied that any damage was caused by the presence of the Press at the Louisville Facility.  It is also denied that Kentucky was under any obligation to remove the Press.  Millennium never asked Kentucky to remove the Press until immediately

3

prior to the initiation of this lawsuit. Moreover, Millennium would not permit Kentucky to remove the Press unless Kentucky first tendered payment for alleged storage fees.

WHEREFORE, Kentucky and Phoenix respectfully request this Court to dismiss Millennium's counterclaim and enter judgment for Kentucky and Phoenix and against Millennium, in an amount to be determined by the Court, together with costs of suit, attorneys' fees, interest and such other relief as the Court deems just.

### Count II – Negligent Misrepresentation

134. Kentucky and Phoenix incorporate by reference the allegations set forth in paragraphs 1 through 95 of their Complaint, deny the factual averments made in paragraphs 96 through 116 of Millennium's affirmative defenses, state that paragraphs 96–98, and 102–116 contain conclusions of law to which no response is required, and incorporate their responses to paragraphs 117-133 of Millennium's Counterclaim as set forth above.

135. Admitted.

136. Admitted. By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

137. It is admitted that Millennium inquired about the quantity of products sold to Vogt each month. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 137.

138. Denied. Kentucky and Phoenix never described their business relationship with Vogt to be "excellent". By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky,

Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

139. Denied. Kentucky and Phoenix never described the volume of specifically manufactured Vogt products as "high." By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

140. Denied. Kentucky and Phoenix never described Vogt's demand for the specifically manufactured products as "large." By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

141. Denied. Kentucky and Phoenix never represented that manufacturing of Vogt products had been in the past and would continue to be profitable. By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

142. Denied. Kentucky and Phoenix never made the representations alleged by Millennium. By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt before entering into the Asset Purchase Agreement or the Transition Agreement. In

addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

143. Denied. Kentucky and Phoenix never made the representations alleged by Millennium. Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

144. It is denied that Kentucky and Phoenix ever made the representations alleged by Millennium. Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 144.

145. It is denied that Kentucky and Phoenix ever made the representations alleged by Millennium. By way of further response, Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt before entering into the Asset Purchase Agreement or the Transition Agreement. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 145.

146. It is denied that Kentucky and Phoenix ever made the representations alleged by Millennium. By way of further response, Millennium had ample opportunity to

conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt before agreeing to the 2.5% commission on sales of Vogt products. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 146.

147.   Denied. Millennium had ample opportunity to conduct due diligence and learn about the true nature of the business relationship between Kentucky, Phoenix and Vogt before the Closing. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 147.

148.   Denied.

149.   Denied. It is denied that Vogt's demands from Kentucky for the specifically manufactured products could be characterized as "low." After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 149.

150.   After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 150.

151.   Denied. It is denied that Kentucky and Vogt made any representations regarding the profitability of the manufacturing of Vogt products. Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt before the Closing. In addition, Vogt directly informed

7

Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. By way of further response, after reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the remaining averments set forth in paragraph 151.

        152.    Denied. It is denied that Kentucky and Phoenix ever made the representations alleged by Millennium. Millennium had ample opportunity to conduct due diligence and learn about the nature of the business relationship between Kentucky, Phoenix and Vogt before the Closing. In addition, Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt. By way of further response, the allegations set forth in paragraph 152 contain conclusions of law to which no response is required.

        153.    Denied. It is specifically denied that Kentucky and Phoenix ever made the representations alleged by Millennium about the Vogt business. It is further denied that Millennium has been damaged in any way.

        WHEREFORE, Kentucky and Phoenix respectfully request this Court to dismiss Millennium's counterclaim, enter judgment for Kentucky and Phoenix and against Millennium, in an amount to be determined by the Court, together with costs of suit, attorneys' fees, interest and such other relief as the Court deems just.

### Count III – Unjust Enrichment

        155.    Kentucky and Phoenix incorporate by reference the allegations set forth in paragraphs 1 through 95 of their Complaint, deny the factual averments made in paragraphs 96 through 116 of Millennium's affirmative defenses, state that paragraphs 96–98, and 102–116 contain conclusions of law to which no response is required, and incorporate their responses to

paragraphs 117-153 of Millennium's Counterclaim as set forth above. By way of further response, there is no paragraph 154 set forth in Millennium's Counterclaim.

156. Denied.

157. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 157.

158. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 158.

159. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 159.

160. After reasonable investigation, Phoenix and Kentucky are without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 160.

161. Denied. To the contrary, Millennium would not permit Kentucky to remove the Press, the Phoenix Dies, the Phoenix Inventories and the Excluded Steel Inventories unless Kentucky first tendered payment for alleged storage fees.

162. Denied. To the contrary, Millennium would not permit Kentucky to remove the Press, the Phoenix Dies, the Phoenix Inventories and the Excluded Steel Inventories unless Kentucky first tendered payment for alleged storage fees.

163. Denied. To the contrary, Kentucky and Phoenix have not been unjustly enriched by Millennium's storage of the named equipment and inventories. Millennium has

benefited from the use of the Press and inventories. By way of further response, the allegations set forth in paragraph 163 contain conclusions of law to which no response is required.

164. Denied. By way of further response, the allegations set forth in paragraph 164 contain conclusions of law to which no response is required.

WHEREFORE, Kentucky and Phoenix respectfully request this Court to dismiss Millennium's counterclaim, enter judgment for Kentucky and Phoenix and against Millennium, in an amount to be determined by the Court, together with costs of suit, attorneys' fees, interest and such other relief as the Court deems just.

## **Affirmative Defenses**

165. Millennium's Counterclaim fails to state a claim upon which relief can be granted.

166. Millennium has failed to state a claim for breach of contract.

167. Millennium has failed to state a claim for negligent misrepresentation.

168. Millennium has failed to state a claim for unjust enrichment.

169. Millennium's claims are barred by the statute of limitations.

170. Millennium's claims are barred by the doctrine of estoppel.

171. Millennium's claims are barred by the doctrine of laches.

172. Millennium's claims are barred by the doctrine of novation.

173. Millennium's claims are barred by the doctrine of waiver.

174. Millennium's claims are barred by the doctrine of unclean hands.

175. Millennium's claims are barred by the parol evidence rule.

176. Millennium's claims are subject to a set-off.

177. Millennium has failed to mitigate its damages.

178. Millennium has breached the Transition Agreement and the Asset Purchase Agreement.

179. Millennium has failed to plead its negligent misrepresentation claim with the specificity required under the law.

180. Millennium's claims are barred by the doctrine of assumption of the risk.

181. Millennium's claims are barred by the doctrine of contributory negligence.

182. Millennium's claims are barred by the statute of frauds.

183. Millennium's claims are barred by the gist of the action doctrine.

184. Millennium's claims are barred by The Transition Agreement and the Asset Purchase Agreement.

185. Millennium had ample opportunity prior to Closing to investigate the nature of the business relationship between Phoenix and Kentucky and Vogt .

186. Millennium's damages are speculative.

187. Vogt directly informed Millennium of Vogt's perception of the nature of the business relationship between Kentucky, Phoenix and Vogt.

SL1 295801v1/06099.014

188.	Kentucky and Phoenix do not waive any applicable affirmative defenses and hereby give notice that they intend to rely on such other defenses as become available or apparent during investigation and discovery.

Date:  September _____, 2002	STEVENS & LEE

By _____
Daniel B. Huyett, Esquire
Attorney I.D. No. 21385
Karin K. Ashford, Esquire
Attorney I.D. No. 83909
111 North Sixth Street
P.O. Box 679
Reading, PA  19603-0679
(610) 478-2034

## CERTIFICATE OF SERVICE

      I, KARIN K. ASHFORD, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Answer of Plaintiffs to Counterclaim of Defendant Millennium Forge, Inc. upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

      A. Elizabeth Balkhani, Esquire
      Hoyle, Morris & Kerr LLP
      One Liberty Place
      Suite 4900
      1650 Market Street
      Philadelphia, PA  19103-7397

                                    _____
                                    Karin K. Ashford

Date:  March 11, 2003